UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIMBERLY MARIE RADAN,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, in her Capacity as [Acting] Commissioner of the Social Security Administration,<br><br>　　　　　　　Defendant. | No. 2:16-CV-0014-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for Summary Judgment. ECF Nos. 16, 18. Plaintiff is represented by Lora Lee Stover. Defendant is represented by Amanda Schapel. The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1)), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income (SSI) benefits and a period of disability and disability insurance benefits on April 9, 2012, alleging an onset date of Aril 2, 2009.[1] Tr. 198-209. Her claims were denied initially and on reconsideration. Tr. 147, 155. A hearing was held before an Administrative Law Judge on April 24, 2014. Tr. 49-85. The ALJ issued a decision on June 2, 2014, finding that Plaintiff was not disabled under the Act. Tr. 21-42.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through March 31, 2010. Tr. 26. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1,

---

[1] The original onset date was April 1, 2009, but Plaintiff amended the onset date to the day after the denial of her last application for benefits. Tr. 24.

2009. Tr. 26. At step two, the ALJ found that Plaintiff had severe impairments consisting of (1) lumbar degenerative disc disease with stenosis; (2) morbid obesity; (3) anemia; (4) chronic obstructive pulmonary disease; (5) depressive disorder; and (6) chronic pain disorder. Tr. 26 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). At step three, the ALJ found that these impairments did not meet or medically equal a listed impairment. Tr. 27. The ALJ then determined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, crouch, kneel, crawl and climb ramps or stairs. She must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration, poorly ventilated areas, unprotected heights, use of moving machinery and irritants such as fumes, odors, dusts, chemicals and gases. She can perform simple, routine and repetitive tasks with simple and predictable changes in the work setting. She can maintain concentration for two-hour segments for simple tasks without more than normally expected brief interruptions. She can work at positions that do not require interaction with the general public. She can have superficial interaction with coworkers and supervisors.

Tr. 29. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work as a home attendant. Tr. 35. At step five, after considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found Plaintiff could perform other work existing in significant numbers in the national economy in representative occupations such as (1): a housekeeper cleaner (DOT #323.687-014), a light unskilled (SVP 2) position with 157,000 jobs nationally; (2) a laundry worker (DOT #302.685-010), a light unskilled (SVP 2)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

position with 216,000 jobs nationally; and (3) a produce sorter (DOT #529.687-186), a light unskilled (SVP 2) position with 39,000 jobs nationally. Tr. 36. Thus, the ALJ concluded that Plaintiff was not disabled and denied her claims on that basis. Tr. 37.

On July 7, 2014 Plaintiff requested review of the ALJ's decision by the Appeals Council. Tr. 16-18. The Appeals Council denied Plaintiff's request for review on November 20, 2015, Tr. 1-6, making the ALJ's decision the Commissioner's final decision that is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for (1) a period of disability and disability insurance benefits under Title II and (2) supplemental security income under Title XVI of the Social Security Act. Plaintiff has identified five issues for review:

1. Whether the ALJ erred in failing to place appropriate weight on the opinions of the consultative examiner, Nathan Henry, Ph.D. and the opinions expressed in the Goodwill work evaluation report.

2. Whether the ALJ erred in assessing Plaintiffs residual functional capacities;

3. Whether the ALJ properly considered the vocational expert's testimony;[2]

---

[2] Plaintiff articulates Issue 3 as whether "the ALJ failed to pose a proper hypothetical to the vocational expert," yet no argument is made for this point. ECF

4. Whether the ALJ erred in assessing Plaintiffs credibility; and

5. Whether the evidence taken from the record as a whole supports the Defendant's decision that Plaintiff is not disabled.

ECF No. 16 at 11.

## DISCUSSION

**A. Weight of Dr. Henry's opinion and the Goodwill Work Assessment**

Plaintiff contends that "the ALJ's determination is not supported by substantial evidence because he improperly evaluated the opinions of the consultative psychological examiner, Nathan Henry, Ph.D. (Tr. 741-746) concerning the nature and extent of Plaintiff's mental conditions and he improperly evaluated the opinions expressed in conjunction with the Goodwill Work Assessment (Tr. 294)." ECF No. 16 at 13 (internal citations modified). According to Plaintiff, the ALJ improperly evaluated the opinions of Nathan Henry, Ph.D. by giving the opinion "some weight" rather than "great weight," and that this resulted in harmful error. ECF No. 1 at 14.

---

No. 16 at 11.  The Court is construing this issue as a general complaint that the ALJ's conclusion is inconsistent with the expert testimony, and is addressed with Issue 2 and 5 after Issue 1, 3 and 4. *See* ECF No. 16 at 15-16.

Even if the ALJ should have placed more weight in Dr. Henry's opinion and the Goodwill Work Assessment, the error is harmless. Importantly, Dr. Henry's opinion actually supports the ALJ's conclusion as to Plaintiff's residual functional capacity and non-disability. Tr. 29-35, 741-745. Among other things, Dr. Henry's report states that Plaintiff "did not endorse problems completing daily living tasks," including going out on weekends, going on walks, grocery shopping, and preparing meals. Tr. 744. The report does not state Ms. Radan is unable to work. Rather, the opinion states that *"Ms. Radan's health problems and the potential impact on her ability to work would need to be assessed by a physician."* Tr. 744-745 (emphasis own). Although the opinion states that Plaintiff's "depression symptoms *will likely limit* her willingness and/or ability to seek, obtain, and maintain employment," Tr. 745 (emphasis own), a "limit" is not the same as a complete bar to employment. Moreover, the work assessment Plaintiff completed at Goodwill Industries further supports the ALJ's conclusion, as this assessment shows Plaintiff was able to successfully perform a wide range of tasks making her fit for employment. Tr. 285-294. Lending this opinion more weight would not change the result, so any error, if found, would be harmless.

**B. Hypothetical**

Plaintiff argues that the ALJ's finding is inconsistent with the vocational expert's testimony in response to hypothetical questions. ECF No. 16 at 15-16.

The vocational expert testified that a person off task greater than 10 to 15 percent of the time would not be able to maintain competitive employment and that a person absent greater than one day a month from work would not be able to maintain unskilled employment. Tr. 82. Importantly, Plaintiff does not specifically allege that she would be off task greater than 10 percent of the time, nor does she allege she would be absent from work more than one day per month. While there is some evidence Plaintiff may perform some tasks slower than others (Tr. 290-291), slower performance is not equal to off task time. And even if slow performance equals off task time, there is no basis for assigning a specific percent. Without this connection, the vocational expert's testimony does not necessarily support Plaintiff's contention that Plaintiff cannot be expected to work in the positions identified by the ALJ. ECF No. 1 at 15-16.

### C. Credibility

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

Plaintiff claims the ALJ's finding that Plaintiff was "not entirely credible" was not based on any "convincing" evidence, and as such resulted in harmful error. ECF No. 16 at 15 (citing Tr. 29). The record shows there is substantial evidence suggesting Plaintiff overstated her condition. Tr. 29-35. In deciding, the ALJ specifically identified the subject of concern (the Plaintiff's "statements concerning the intensity, persistence and limiting effects") and identified a specific reason for the concern (the symptoms of pain were "not consistent with the objective medical evidence in her file."). Tr. 29-30. The record is replete with medical evidence,

1  expert reports, and testimony (including Plaintiff's own testimony) that indicated
2  Plaintiff could do more than alleged. Tr. 29-35. Notably, *inter alia*, Plaintiff
3  claimed that she could not walk more than a block or stand more than 10 minutes,
4  yet she also reported that she would often get off her bus a few stops early so she
5  could walk even further, and the medical reports observed that she could stand for
6  30 minutes. Tr. 32-34, 66, 611, 809.

7  **D. Residual functional capacity and disability**

8  Plaintiff argues that the ALJ's findings of residual functional capacity and
9  non-disability are not supported by substantial evidence. ECF No. 16 at 15-16.
10 This Court disagrees. The ALJ's findings were supported by substantial objective
11 medical evidence, expert opinion, and Plaintiff's own testimony. Tr. 28–35.
12 Beside the specific complaints addressed above, Plaintiff complains that "[t]he
13 ALJ ignored the limitations regarding [Plaintiff's] ability to concentrate, attend and
14 keep pace due to mental limitations [and] her pain complaints." ECF No. 16 at 14.
15 The record shows otherwise.

16 The ALJ specifically considered Plaintiff's mental impairments. Tr. 34-35.
17 For example, the ALJ's decision references the opinion of Tracy Gordy, M.D.,
18 which states that Plaintiff has "no more than mild difficulty understanding
19 remembering and carrying out simple instructions . . . [and] has no difficulty
20 interacting with the public, supervisors or coworkers, [and that Plaintiff's] alleged

depressive symptoms do not significantly alter her lifestyle." TR. 33.

Plaintiff's pain was also recognized and considered. Tr. 30-33. The ALJ's decision specifically references her complaints of pain throughout. *Id*. The ALJ balanced the complaints of pain with the objective medical evidence and expert opinions such as Howard Platter, M.D., who found the claimant can perform work at the light exertional level. Tr. 33. The ALJ specifically recognized that Plaintiff's "pain was well-controlled with [medication]." Tr. 30.

In sum, the ALJ relied on numerous expert opinions, objective medical evidence, the Goodwill assessment, and Plaintiff's own testimony in reaching the conclusion. This information provides substantial evidence supporting the ALJ's finding as to Plaintiff's residual functional capacity and nondisability. Tr. 28-36.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, and furnish copies to counsel and CLOSE the file.

**DATED** November 15, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14